FILED

18 MAR -9 PM 12: 37



# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOREA TRADE INSURANCE CORPORATION, a Korean Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVEON, INC., a Delaware corporation; ACTIVEON LLC, a Delaware limited liability company; ACTIVEON HOLDINGS, INC., a Delaware corporation; RCA ELECTRONICS INC., a Delaware corporation; ON CORP USA, INC., a Delaware corporation; CHONG WOEN LEE, an individual; and HAN SUK LEE, an individual,<br><br>Defendants. | Case No.: 17-cv-0811-WQH-MDD<br><br>**ORDER** |

HAYES, Judge:

    The matter before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendants. (ECF No. 14).

## I. Background

On April 21, 2017, Plaintiff Korea Trade Insurance Corporation ("K-sure") initiated this action by filing a Complaint (ECF No. 1). On August 18, 2017, K-sure filed the First Amended Complaint (the "FAC") (ECF No. 13). The FAC names seven Defendants: ActiveON, Inc.; ActiveON, LLC; ActiveON Holdings, Inc.; RCA Electronics, Inc.; ON Corp. USA, Inc.; Chong Woen Lee ("CW Lee"); and Han Suk Lee ("HS Lee"). *Id.* The FAC brings claims against CW Lee and HS Lee for "RICO conspiracy (18 U.S.C § 1962(d))" and "civil RICO (18 U.S.C. § 1962(c))". *Id.* The FAC also brings claims against all Defendants for fraud (intentional misrepresentation), fraud (concealment), and negligent misrepresentation. *Id.*

On September 15, 2017, Defendants filed the Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 14).[1] On October 6, 2017, K-sure filed an Opposition to Defendants' Motion to Dismiss First Amended Complaint. (ECF No. 16). On October 16, 2017, CW Lee and HS Lee filed a Reply Memorandum of Points and Authorities in Support of Motion to Dismiss. (ECF No. 18).[2] The Court held oral argument on the Motion to Dismiss on February 28, 2018. (ECF No. 22).

---

[1] Defendants also filed a Request for Judicial Notice in Support of Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 15). The Court denies Defendants' Request for Judicial Notice (ECF No. 15) as unnecessary to the resolution of the Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 14).

[2] CW Lee and HS Lee stated that the Reply was filed by them, and not the other Defendants, based on the Notice of Receivership and Stay of Proceedings against Defendants ActiveON, Inc. fka RCA Electronics Corp. fka ONCorp. US, Inc.; ActiveON LLC; and Clicka Holdings, Inc. fka ActiveON Holdings, Inc. (ECF No. 17). (ECF No. 18 at 2). The Notice of Receivership and Stay of Proceedings states that K-sure's claims against ActiveON, Inc.; ActiveON LLC; and Clicka Holdings, Inc. are stayed by an Order Appointing General Receiver issued by the Superior Court of the State of Washington in and for the County of King. (ECF No.17 at 2). K-sure filed a Limited Objection to Defendants' Notice of Receivership and Stay of Proceedings. (ECF No. 19). K-sure contends that "[t]he Washington state court receivership order does not have any automatic or binding effect on this action [because s]tate courts simply do not have the power to enjoin or restrict a federal court action." ECF No. 19 at 2 (citing *Baker v. General Motors Corp.*, 522 U.S. 222, 236 n. 9 (1998)). On October 18, 2017, the Court issued an Order stating "This case before the United States District Court for the Southern District of California is not stayed." (ECF No. 20).

## II. Allegations in the FAC

> K-sure is a corporation duly organized under the laws of the Republic of Korea ("Korea"). K-sure is an export credit agency that focuses on promoting trade and overseas investment of enterprises in Korea. While domiciled and headquartered in Korea, K-sure maintains branch offices to conduct business in various cities around the world, including one such branch office in Los Angeles, California, which it has operated continuously since 1992.

FAC at ¶ 7. "Among other functions, K-sure's Los Angeles office performs commercial credit investigations and credit information management, coordinates debt collection activities, and facilitates communications with its customers' United States-based offices, affiliates, and personnel, such as ON USA." *Id.* at ¶ 22.

Defendants ActiveON, Inc.; ActiveON, LLC; ActiveON Holdings, Inc.; and RCA Electronics, Inc. are Delaware companies which are or were engaged in the sale or distribution of consumer electronics products. *Id.* at ¶¶ 8–10. Defendant ON Corp US, Inc. "either changed its name to RCA Electronics, Inc. and then to ActiveON, Inc., or it otherwise merged with or was acquired by one or more of Defendants ActiveON, Inc.; ActiveON LLC; Activeon Holdings, Inc.; and/or RCA Electronics, Inc." *Id.* at ¶ 12. Defendants CW Lee and HS Lee actively managed Defendants ON Corp US, Inc.; ActiveON, Inc.; ActiveON LLC; Activeon Holdings, Inc.; and RCA Electronics, Inc. as senior executives throughout the time periods described herein. *Id.* at ¶ 15.

> Through numerous fraudulent communications, falsified documents, and the purposeful concealment of facts, the Defendants and their co-conspirators fraudulently induced K-sure to issue and extend export insurance policies and financial guarantees ("K-sure Policies") used to secure bank financing, loans and credit facilities ("Loans") for the manufacturing and export of consumer electronics products (primarily televisions) ("Export Products") to retailers in the United States. When ON USA failed to remit sale proceeds from the United States to repay the Loans covered by K-sure Policies, K-sure was forced to make payments on the K-sure Policies in excess of $137 million dollars.

*Id.* at ¶ 4. The payments on the K-sure Policies were made to the Industrial Bank of Korea, the Korea Exchange Bank, and Nonghyup Bank. *See id.* at ¶¶ 36–37, 40, 109–116. A number of the fraudulent communications that induced K-sure to issue and extend the

K-sure Policies were sent from the United States by CW Lee and HS Lee. *See, e.g., id.* at ¶¶ 54, 55, 61, 63, 65, 72, 81–87, 90–92, 95, 98, 101, 103.

## III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Federal Rule of Civil Procedure 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## IV. Discussion

### A. RICO

The FAC brings claims for "RICO conspiracy (18 U.S.C § 1962(d))" and "civil RICO (18 U.S.C. § 1962(c))" against CW Lee and HS Lee. *Id.* Section[3] 1962(c) states

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

[3] All "sections" referred to in this Order appear in Title 18 of the United States Code.

4

Section 1961(1)(B) defines "racketeering activity" to include "any act which is indictable under" 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B). Section 1962(d) makes it "unlawful for any person to conspire to violate" § 1962(c). *Id.* at § 1962(d). Section 1964(c), commonly referred to as "civil RICO," "creates a private civil cause of action that allows '[a]ny person injured in his business or property by reason of a violation of section 1962' to sue in federal district court and recover treble damages, costs, and attorney's fees." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2097 (2016) (alteration in original) (quoting 18 U.S.C. § 1964(c)).

In order to bring its claims against CW Lee and HS Lee for injuries caused by their alleged violations of § 1962(c) and § 1962(d), K-sure must state a claim under § 1964(c). Defendants contend that K-sure fails to state a claim under § 1964(c) because K-sure fails to allege a 'domestic' injury. ECF No. 14-1 at 20 (citing *RJR Nabisco*, 136 S. Ct. at 2106). K-sure contends that the FAC alleges a domestic injury. (ECF No. 15 at 13–14).

### 1. Contentions of the Parties

Defendants contend that Plaintiff's RICO claims should be dismissed because "K-sure has not and cannot plausibly plead that it suffered a domestic injury to business or property." ECF No. 14-1 at 15 (quoting *RJR Nabisco*, 136 S. Ct. at 2111). Defendants contend that K-sure's alleged injury is the payment to the Korean Banks. *Id.* at 21 (citing FAC at ¶¶ 140, 154). Defendants contend that injury is not domestic because "K-sure paid, and thus relinquished physical control of, the alleged $137 million to the Korean Banks in Korea," and "[a]ny economic harm or harm to K-sure's business also would have been felt in Korea, as that is where K-sure is incorporated and principally located." *Id.* at 20 (citing FAC at ¶¶ 7, 20–21, 24, 108–116).

K-sure contends that the FAC does allege a domestic injury, focusing on the allegations that (1) K-sure "has maintained a Los Angeles office for more than 25 years to facilitate its significant business with the United States – including the transactions with the Defendants," ECF No. 16 at 14 (citing FAC at ¶¶ 7, 21–23); (2) "the RICO enterprise

was directed at the United States as it involved a United States based corporate enterprise incorporated in Delaware," *id.* at 14–15 (citing FAC at ¶¶ 8–12, 129, 131); (3) "the RICO Defendants' alleged activities were directed at fraudulently obtaining credit guarantees from K-sure to facilitate the importation and sales of televisions *in the United States* through ON USA, an entity that they created in the United States," *id.* at 15 (citing FAC at ¶¶ 131, 136, 139); and (4) "much of the RICO Defendants' racketeering activity and actions taken in support of the scheme occurred in California," *id.* (citing FAC at ¶¶ 136–138).

### 2. Applicable Law

In *RJR Nabisco*, the United States Supreme Court addressed two questions concerning the extraterritorial application of RICO: "First, do RICO's substantive prohibitions, contained in § 1962, apply to conduct that occurs in foreign countries? Second, does RICO's private right of action, contained in § 1964(c), apply to injuries that are suffered in foreign countries?" 136 S. Ct. at 2099.

The Supreme Court answered the first question by "conclud[ing] that RICO applies to some foreign racketeering activity." *Id.* at 2103. The Supreme Court concluded that "[a] violation of § 1962 may be based on a pattern of racketeering that includes predicate offenses committed abroad, provided that each of those offenses violates a predicate statute that is itself extraterritorial." *Id.*

The Supreme Court then "turn[ed] to RICO's private right of action" and "conclude[d] that § 1964(c) does not overcome the presumption against extraterritoriality." *Id.* at 2106. The Supreme Court held that "[a] private RICO plaintiff therefore must allege and prove a *domestic* injury to its business or property." *Id.* "Section 1964(c) . . . does not allow recovery for foreign injuries." *Id.* at 2111. The Supreme Court dismissed the plaintiffs' claims under § 1964(c) because they "rest[ed] entirely on injury suffered abroad." *Id.*

The plaintiffs in *RJR Nabisco* waived their claims for domestic injuries, so the Supreme Court did not have to decide whether the injuries suffered by the plaintiffs were domestic or foreign. *Id.* The Supreme Court did state that "[t]he application of [the

6

domestic injury] rule in any given case will not always be self-evident, as disputes may arise as to whether a particular alleged injury is 'foreign' or 'domestic.'" *Id.* The Supreme Court also stated that § 1964(c)'s domestic injury requirement "does not mean that foreign plaintiffs may not sue under RICO." *Id.* at 2110 n.12.

Since the Supreme Court decided *RJR Nabisco*, a number of district courts and the Second Circuit Court of Appeals have decided whether the plaintiffs before them alleged domestic injuries for which they could recover under § 1964(c). Many of these courts found that the location of the plaintiff alleging economic injury was relevant to the location of the injury allegedly suffered by that plaintiff. *See, e.g., Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*, 244 F. Supp. 3d 750, 755 (N.D. Ill. 2017), *reconsideration denied, motion to certify appeal granted*, No. 13 C 3455, 2017 WL 1862836 (N.D. Ill. May 9, 2017) (collecting cases applying the rule that "a corporate entity generally suffers economic harm in its principal place of business"); *Bascuñán v. Daniel Yarur ELS Amended ComplaintA*, No. 15-CV-2009 (GBD), 2016 WL 5475998, at *4 (S.D.N.Y. Sept. 28, 2016) (determining "where an economic injury accrued," by "ask[ing] two common-sense questions: who became poorer, and where did they become poorer.'" (alterations and quotations omitted)). The Second Circuit Court of Appeals focused on the location of the property that the plaintiff allegedly lost because of the defendants' actions. *Bascunan v. Elsaca*, 874 F.3d 806, 820–21 (2d Cir. 2017) ("[A]bsent some extraordinary circumstance, the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad."). At least one district court decided whether an injury was domestic under § 1964(c) by examining the defendants' conduct and its purposes. *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1156 (C.D. Cal. November 14, 2016) (concluding that the plaintiff suffered a domestic injury because "the defendants specifically targeted their [injury-inducing] conduct at California with the aim of thwarting [the plaintiff's] rights in California"); *but see Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, 245 F. Supp. 3d 650, 658 (D.N.J. 2017) ("[T]he only relevant inquiry is where Plaintiff's injury occurred—i.e. where the impact of

Plaintiff's injury was felt—and not where the predicate acts occurred."); *Bascunan*, 2016 WL 5475998, at *6 ("[An] approach[ ]which focuses on . . . the defendant's contacts with the forum . . . to determine where a plaintiff suffered an alleged RICO injury[ ]is misguided.").

### 3. Analysis

The FAC alleges that K-sure is a Korean export credit agency headquartered and domiciled in Korea. FAC at ¶ 7. K-sure has a "branch office[]" in Los Angeles that "performs commercial credit investigations and credit information management, coordinates debt collection activities, and facilitates communications with its customers' United States-based offices, affiliates, and personnel." *Id.* CW Lee and HS Lee "fraudulently induced K-sure to issue and extend export insurance policies and financial guarantees ('K-sure Policies') used to secure bank financing, loans and credit facilities ('Loans')." *Id.* at ¶ 4. CW Lee and HS Lee did so, in part, "[t]hrough numerous fraudulent communications," many of which were sent from the United States. *Id.* at ¶¶ 4, 50–106. "When ON USA failed to remit sale proceeds from the United States to repay the Loans covered by K-sure Policies, K-sure was forced to make payments on the K-sure Policies in excess of $137 million dollars." *Id.* at ¶ 4.[4] Those payments were made to the Industrial Bank of Korea, the Korea Exchange Bank, and Nonghyup Bank. *See id.* at ¶¶ 36–40, 109–116. The FAC does not allege the location of the $137 million dollars before K-sure paid it out. *See id.* Because K-sure is allegedly a Korean corporation domiciled and headquartered in Korea, it is not reasonable to infer that the $137 million dollars was located in the United States before K-sure paid it out. The FAC also does not allege where Bank of Korea, the Korea Exchange Bank, and Nonghyup Bank are headquartered or domiciled. *See id.* Considering the names of those banks and K-sure's role as an export

---

[4] While K-sure alleges that its "business interests, which include operations within the United States . . . , suffered significant damages as a result of Defendants' conduct," K-sure does not allege any facts showing any damage to its business interests beyond the $137 million dollars of payments.

8

credit agency, it is not reasonable to infer that the banks are headquartered or domiciled in the United States. In sum, the FAC alleges that the injuries suffered were payments made by a Korean company to other Korean companies in Korea.

The Court finds that K-sure has failed to allege that it suffered a domestic injury under § 1964(c). Consequently, K-sure has failed to state any civil RICO claims. *RJR Nabisco*, 136 S. Ct. at 2111. K-sure's RICO claims are dismissed.

### 4. Leave to Amend

Defendants request K-sure's RICO claims be dismissed without leave to amend. (ECF No. 14-1 at 23). K-sure contends that it should be permitted to file a second amended complaint because it "can add additional allegations and details in an amended pleading to cure [the] deficiencies identified by the Court." (ECF No. 16 at 30).

A district court may dismiss a claim without leave to amend if "any proposed amendment would be futile." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (citing *Klamath–Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau*, 701 F.2d 1276, 1292–93 (9th Cir.)). Defendants contend that any amendment to the FAC would be futile because "K-sure cannot dispute that [the $137 million dollars in] payments took place in Korea, where both K-sure and the Korean Banks are located," and "all of the circumstances surrounding the financing, the substantive communications, and the claims made by and payments made to the Korean Banks[ ]occurred in Korea." (ECF No. 14-1 at 23). The Court does not find that any amendment to the FAC would be futile at this stage of the proceedings.

### B. Fraud and Misrepresentation

In addition to their RICO claims, K-sure brings claims under state law for fraud (intentional misrepresentation), fraud (concealment), and negligent misrepresentation. FAC at 1. K-sure alleges that the Court "has subject matter jurisdiction . . . over K-sure's claims under state laws as such claims are so related to claims in the action under the laws of the United States of America that they form part of the same case or controversy . . . ."

*Id.* at ¶ 18. Defendants ask the Court to decline to exercise pendant jurisdiction over K-sure's state law claims. (ECF No. 14-1 at 10).

Under 28 U.S.C. § 1367,

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

"A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims . . . ." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003)).

A district court may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. §1367(c). In deciding whether to exercise supplemental jurisdiction, a court must consider the underlying objective of "most sensibly accommodating the values of economy, convenience, fairness, and comity." *Exec. Software N. Am., Inc. v. USDC for the Cent. Dist. of Calif.*, 24 F.3d 1545, 1557 (9th Cir. 1994) (internal quotations omitted). "The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (citing *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)).

The Court has dismissed all of K-sure's claims brought under federal law. The Court finds that "the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity— . . . point toward declining to

10

17-cv-0811-WQH-MDD

exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)). Accordingly, the Court declines to exercise jurisdiction over K-sure's state law claims for fraud and negligent misrepresentation.

**V.  Conclusion**

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 14) is HEREBY GRANTED. The FAC (ECF No. 13) is DISMISSED without prejudice and with leave to file a motion to file an amended complaint within thirty days of the date of this order. If no motion is filed, the Court will direct the clerk to close the case.

DATED: 3/29/18

WILLIAM Q. HAYES
United States District Judge